# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| IN RE: DICAMBA HERBICIDES LITIGATION | ) ) | Main Case 1:18-md-2820-SNLJ<br>Indiv. Case 1:18-cv-21-SNLJ |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion to remand (#8) in *McIvan Jones Farm, Inc. v. Monsanto Co.*, 1:18-CV-21-SNLJ (E.D. Mo.). The matter was briefed extensively, and the motion is now ripe. Plaintiffs' motion will be granted because plaintiffs have not alleged any state-law cause of action that depends on a substantial issue of federal law.

## I.     Factual and Procedural Background

Plaintiffs hope to represent any producer who grew soybeans that were "not resistant to and [were] damaged by dicamba herbicide." (#2 at 29, ¶ 169). They claim Monsanto released its dicamba-tolerant seed in 2015 and 2016 with no corresponding dicamba herbicide. As a result, farmers illegally sprayed an old formulation of dicamba herbicide that was unapproved for in-crop, over-the-top, use, and was "volatile," or prone to drift. This damaged neighboring crops, which supposedly forced neighboring farmers to plant Monsanto's dicamba-tolerant seed defensively. In 2017, Monsanto finally released its dicamba herbicide. This new dicamba formulation was approved for in-crop use. Plaintiffs claim this new formulation is still volatile and still damaged intolerant soybeans in neighboring fields.

1

Plaintiffs bring state-law counts for (1) strict liability–ultrahazardous, (2) negligence, (3) strict liability–defective design, and (4) trespass. Especially relevant here, plaintiffs allege Monsanto was negligent due to product labeling shortcomings.

Plaintiffs filed this case in state court. Defendants removed under 28 U.S.C. § 1441(a), which allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" Defendants claim this Court has original federal question jurisdiction under 28 U.S.C. § 1331, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." So this motion boils down to a simple question: does any one of plaintiffs' claims arise under federal law?

## II.     Legal Background

"[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (alteration in original) (*quoting Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). "The well-pleaded complaint rule 'provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* (*quoting Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). As such, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of [ordinary] pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393.

Instead, "[f]ederal question jurisdiction exists if the well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes Gas*, 843 F.3d at 329 (*quoting Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998)). These are the two paths to federal-question jurisdiction. *See Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 755 (E.D. Ky. 2014).

The first path, in which federal law creates the cause of action, is the most common path to federal-question jurisdiction. *Merrell Dow*, 478 U.S. at 808. The second path, in which the well-pleaded complaint raises "significant federal issues," *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), is much less common. It "applies only to a 'special and small category' of cases that present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases.'" *Great Lakes Gas*, 843 F.3d at 331 (alteration in original) (*quoting Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699–700 (2006)). "The paradigmatic example of a state claim with an embedded (though not necessarily significant) federal issue is a common-law claim for negligence per se based on the violation of a federal duty." *Dillon*, 992 F. Supp. 2d at 756.

This case deals only with the second path to federal-question jurisdiction. As the removing party, the burden to show that this case belongs on the second, uncommon path is Monsanto's. *In re Business Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

### III. Discussion

3

The Supreme Court recently explained the second path to federal-question jurisdiction as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (interpreting *Grable*). All in all, "*Grable* stands for the proposition that a state-law claim will present a justiciable federal question only if it satisfies *both* the well-pleaded complaint rule *and* passes the 'implicate[s] significant federal issues' test. *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) (alteration in original) (*quoting Grable*, 545 U.S. at 311); *see also Dillon*, 992 F. Supp. 2d at 757.

Again, under the well-pleaded complaint test, the Court looks *at the complaint only* to decide whether "plaintiff's right to relief *necessarily depends on* resolution of a substantial question of federal law." *Great Lakes Gas*, 843 F.3d at 329 (emphasis added) (*quoting Williams*, 147 F.3d at 702). So, the heart of this issue is whether an <u>element</u> of one of plaintiffs' state-law claim turns on a substantial federal question. *See Dillon*, 992 F. Supp. 2d at 757 ("Even if they are substantial, federal questions triggering jurisdiction must still appear amid the elements of the plaintiff's cause of action."); 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3566 (3d ed.) ("Only if the federal matter is presented in [a well-pleaded] complaint should it then be necessary to assess the substantiality and centrality of the federal issues.").

Turning now to the complaint, it is clear that none of plaintiffs' claims depend on embedded issues of federal law. As relevant here, plaintiffs allege Monsanto was

4

negligent—under Missouri law—due to product labeling shortcomings. Under Missouri law, common law negligence has three elements: "(1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *McComb v. Norfus*, 541 S.W.3d 550, 554 (Mo. banc 2018) (*quoting Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 793 (Mo. banc 2016)). Monsanto does not explain how any one of these state-law elements (or any other elements in the other state-law claims) depends on any federal issue.

Monsanto mistakenly relies on *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), to support its claim that plaintiffs must prove Monsanto violated federal pesticide labeling requirements to succeed on their negligence-based state-law labeling claims. In *Bates*, "[t]he question presented [was] whether the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). . . pre-empts [plaintiffs'] state-law claims for damages." *Bates*, 544 U.S. at 434. The preemption defense was front and center because FIFRA prohibits states from imposing any labeling or packaging requirements "in addition to or different from" the requirements mandated by FIFRA. 7 U.S.C. § 163v(b). Monsanto relies on the following language to support its plaintiffs-must-prove-a-violation-of-FIFRA argument:

> *If a defendant so requests*, a court should instruct the jury on the relevant FIFRA misbranding standards, as well as any regulations that add content to those standards. For a manufacturer should not be held liable under a state labeling requirement subject to § 136v(b) unless the manufacturer is also liable for misbranding as defined by FIFRA.

*Bates*, 544 U.S. at 454 (emphasis added).

5

Based on this language, Monsanto argues "the Supreme Court held that to recover on a state law pesticide labeling claim, the plaintiff must prove that the pesticide violated the federal pesticide labeling requirements set out if FIFRA." (#16 at 6) (footnote omitted). The Court disagrees. First, the quoted language is dicta, and the Supreme Court did not "hold" what Monsanto says it did. Second, the Supreme Court wrote the quoted passage in the context of preemption—a defense. The lead-in phrase makes this clear—*if a defendant so requests*. As plaintiffs point out, it is clear "*Bates* made no such pronouncement regarding the *elements* of *any* state law claim." (#20 at 3.) At least one other federal court has read *Bates* this way. *See, e.g.*, *City of Livingston v. Dow Chemical Co.*, No. C 05-03262 JSW, 2005 WL 2463916, at *3 (N.D. Cal. Oct. 5, 2005) ("[T]he *Bates* Court made this comment in the context of explaining how a court should adjudicate the issue of preemption. That is quite different from holding in the first instance, even if preemption is not raised, that a state-law labeling claim can only be adjudicated by first construing FIFRA.").

Monsanto does identify one case, *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671 (S.D. Ohio 2014), in which a federal court denied a motion to remand in a similar situation. 996 F. Supp. 2d at 683; *but see Sangimino v. Bayer Corp.*, No. C 17-01488 WHA, 2017 WL 2500904, at *2 (E.D. Cal. June 9, 2017) (rejecting the analysis in *H.R. ex rel. Reuter*). In that case, the Court analyzed the first element of *Grable* (as articulated in *Gunn*)—whether the state-law claim raised a disputed federal issue—by looking to the federal statute. *Id.* at 678. This is inconsistent with *Gunn* itself, in which the Court looked to the elements of the state-law claim when analyzing the first element

6

of *Grable*. *Gunn*, 568 U.S. at 259. Also, if *H.R. ex rel. Reuter* stands for the proposition that a preemption defense raises a disputed federal issue sufficient for removal, it is inconsistent with Supreme Court precedent. *Caterpillar Inc.*, 482 U.S. at 393.

Under these circumstances, Monsanto has not met its burden to show the "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes Gas*, 843 F.3d at 329 (*quoting Williams*, 147 F.3d at 702). The bottom line is that plaintiffs will have to show a violation of FIFRA only if Monsanto raises the preemption defense. This is not a case in which plaintiffs must show that a federal standard was violated to satisfy an element of their claim. *See, e.g.*, *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299-SNLJ, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017) (denying remand because an element of plaintiffs' state-law claim depended on federal law). Again, the "state-law labeling" claim is simply that Monsanto was negligent because its labeling was insufficient under Missouri law.

Even if it cannot show that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, Monsanto claims that it can satisfy an exception to the well-pleaded complaint rule: complete preemption. Monsanto argues the plaintiffs' claims are completely preempted by the Plant Protection Act ("PPA"), which grants the Animal and Plant Health Inspection Service ("APHIS") the power to deregulate genetically modified seed. Exercising this authority, APHIS is the federal agency that deregulated Monsanto's dicamba-tolerant cotton and soybean seed, making the seed available for purchase.

"Complete preemption only applies where a federal statute 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal.'" *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) (alteration in original) (*quoting Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "A conclusion that there is complete preemption effectively maintains that 'the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute.'" *Id.* (*quoting King v. Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). The Eighth Circuit has cautioned that complete preemption is different than "ordinary" preemption, and complete preemption is "quite rare." *Id.* at 248.

Indeed, the Supreme Court has found complete preemption in only three statutes: the Labor Management Relations Act, ERISA, and the National Bank Act. *Id.* (citing cases). Additionally, the Eighth Circuit has "recognized complete preemption in certain particular areas of 'special federal interest.'" *Id.* (*quoting Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996)) (citing cases dealing with two railroad-related statutes and the Indian Gaming Regulatory Act).

It is fatal to Monsanto's argument that "removal under the complete preemption doctrine is proper only in circumstances where 'a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action *for the type of claim asserted*.'" *Id.* at 250 (emphasis added) (*quoting Thomas v. U.S. Bank Nat'l Ass'n ND*, 575 F.3d 794, 797 (8th Cir. 2009)).

According to Monsanto, the PPA prohibits—and expressly preempts—"state regulation of genetically modified seeds in a manner that is inconsistent with federal

8

regulation."[1] (#16 at 15) (*citing* 7 U.S.C. § 7756(b)(1)). Monsanto goes on to argue that the PPA "provide[s] a federal avenue through which Plaintiffs can pursue their contention that Xtend seeds should not be sold." (#16 at 22.) That is, "[a]ny person may petition the Secretary to add a plant pest to, or remove a plant pest from, *the regulations* issued by the Secretary under paragraph (1)." 7 U.S.C. § 7711(c)(2) (emphasis added). But one thing immediately jumps out from the statute: the petition process allows any person to ask the Secretary to amend the regulations. It does not allow any redress for a person who claims he or she was injured by a third party's tortious conduct. That alone strongly suggests the PPA provides no federal "cause of action."

Even if the administrative petition procedure provides a "cause of action," there is still no complete preemption. The ability to petition the federal agency is clearly no substitute for the type of claims plaintiffs assert. Again, plaintiffs ground their claims in tort, alleging they were "injured by irresponsible conduct of a biotechnology developer." (#9 at 14.) They ask for damages, not injunctive relief, which would be the natural remedy if they simply wanted the dicamba-tolerant seed removed from the market. In fact, plaintiffs are not asking the agency for any relief at all. As much as Monsanto

---

[1] The express preemption provision provides, in relevant part, that

> no State or political subdivision of a State may regulate the movement in interstate commerce of any . . . plant, . . . plant pest, noxious weed, or plant product in order to control . . ., eradicate . . ., or prevent the introduction or dissemination of a . . . plant pest, or noxious weed, if the Secretary has issued a regulation or order to prevent the dissemination of the . . . plant pest, or noxious weed within the United States.

7 U.S.C. § 7756(b)(1).

9

would prefer to frame plaintiffs' theory as a "duty not to sell," that's not how plaintiffs frame the issues. Monsanto will be free to argue that the practical effect of plaintiffs' theory is a duty not to sell. But this argument will surface in the context of the ordinary preemption defense. As such, Monsanto has not met its burden to show that Congress meant for the federal statute to be the exclusive cause of action for the type of claim asserted. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1191 (8th Cir. 2015) ("[I]t is unlikely that Congress would intend to completely preempt state-law causes of action without providing a federal cause of action designed to vindicate *similar rights and interests or to redress wrongs of a similar type*.") (emphasis added); *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1207 (10th Cir. 2012) ("[T]he availability of an administrative remedy *against the [agency]* has no bearing on whether Mosaic's state law claims *against Devon* have been completely supplanted by a private federal cause of action.").

## IV. Conclusion

It seems likely that Monsanto will raise and vigorously argue a preemption defense when the appropriate time comes. This is not that time because none of plaintiffs' claims arise under federal law and because plaintiffs' claims are not completely preempted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand (#8) is **GRANTED.**

10

So ordered this   31st   day of May 2018.

                                                               STEPHEN N. LIMBAUGH, JR.
                                                               UNITED STATES DISTRICT JUDGE